**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: ltfisher@bursor.com
        jwilner@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7408
Facsimile: (212) 989-9163
E-mail: pfraietta@bursor.com

**DRURY LEGAL, LLC**
Scott R. Drury (State Bar No. 355002)
6 Carriage Lane
Highwood, Illinois 60040
Telephone: (312) 358-8225
scott@drurylegal.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE DOE, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>  v.<br><br>JOYOUS, PBC,<br><br>      Defendant. | Case No. 3:24-cv-02357-JD<br><br>**PLAINTIFF'S NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT WITH DEFENDANT JOYOUS PBC; SUPPORTING MEMORANDUM OF LAW**<br><br>Date: June 26, 2025<br>Time: 10:00 am<br>Courtroom: 11 – 19th Floor<br>Judge: Hon. James Donato |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN THAT** on June 26, 2025, at 10:00 a.m., or as soon thereafter as counsel may be heard by the above-captioned Court, in Courtroom 11 on the 19th Floor of the San Francisco United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, the Honorable James Donato presiding, Plaintiff Jane Doe, ("Plaintiff"), by and through her undersigned counsel of record, will and hereby does move, pursuant to Fed. R. Civ. P. 23(e), for the Court to: (i) grant preliminary approval of the proposed Class Action Settlement Agreement and Release (the "Settlement Agreement") submitted herewith; (ii) provisionally certify the Settlement Class for the purposes of preliminary approval, designate Plaintiff as the Class Representative, and appoint the undersigned as Class Counsel; (iii) establish procedures for providing notice to members of the Settlement Class; (iv) approve forms of notice to Settlement Class Members; (v) mandate procedures and deadlines for exclusion requests and objections; and (vi) set a date, time, and place for a Final Approval Hearing (the "Motion").

This Motion is made on the grounds that terms of the proposed Settlement Agreement are fair, reasonable, and adequate, and that preliminary approval of the Settlement is therefore proper because each requirement of Rule 23(e) has been met. Accordingly, Plaintiff requests that the Court enter the accompanying [Proposed] Order Preliminarily Approving the Proposed Class Action Settlement, Scheduling Hearing for Final Approval Thereof and Approving the Proposed Form and Plan of Class Notice (the "[Proposed] Preliminary Approval Order").

The Motion is based on the Declaration of Philip L. Fraietta (the "Fraietta Decl.") and the exhibits attached thereto, including the Settlement Agreement; the [Proposed] Preliminary Approval Order submitted herewith; the Memorandum of Law filed herewith; the pleadings and papers on file in this Litigation; and such other evidence and argument as may subsequently be presented to the Court.

Dated:  April 28, 2025                    **BURSOR & FISHER, P.A**.

By:   _/s/ Philip L. Fraietta_
                Philip L. Fraietta

Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor

New York, NY 10019
Telephone: (646) 837-7408
Facsimile: (212) 989-9163
E-mail: pfraietta@bursor.com

L. Timothy Fisher (State Bar No. 191626)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
          jwilner@bursor.com

**DRURY LEGAL, LLC**
Scott R. Drury (State Bar No. 355002)
6 Carriage Lane
Highwood, Illinois 60040
Telephone: (312) 358-8225
scott@drurylegal.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

PAGE(S)

MEMORANDUM OF LAW ...............................................................................................1

I.     INTRODUCTION ....................................................................................................1

II.    PROCEDURAL BACKGROUND.........................................................................1

III.   INFORMATION ABOUT THE PROPOSED SETTLEMENT.............................1

      A.    PG 1(a): Class Definition ...........................................................................2

      B.    PG 1(b): The Claims to be Released ...........................................................2

      C.    PG 1(e), 1(g), 6, 7, 8: Allocations and Payments from the Settlement Fund ..........3

           The Settlement Fund .....................................................................................3

           Service Awards .............................................................................................3

           Attorneys' Fees and Expense Award ...........................................................4

      D.    PG 1(f) & PG 2: Settlement Administration ...............................................4

IV.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE .........5

      A.    The *Hanlon* Factors....................................................................................6

           Strength of Plaintiff's Case ..........................................................................6

           Risk of Continuing Litigation ......................................................................8

           Risk of Maintaining Class Action Status ....................................................9

           PG 1(c): The Amount Offered in Settlement...............................................9

           The Extent of Discovery .............................................................................10

           Experience and Views of Counsel ..............................................................10

      B.    Rule 23(e)(2) Factors .................................................................................11

           1.     The Class Is Adequately Represented.........................................11

           2.     The Settlement Was Negotiated at Arm's Length .....................11

           3.     The Settlement Provides Adequate Relief to the Settlement Class ..........12

           4.     The Settlement Is Equitable ........................................................14

V.     CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS APPROPRIATE ...14

        A.     The Class Satisfies Rule 23(a) ................................................................16

               1.     The Class Is Sufficiently Numerous. ..........................................16

               2.     Common Questions of Law and Fact Exist. ...............................16

               3.     Plaintiff's Claims are Typical ....................................................17

               4.     Plaintiff and Her Counsel Adequately Represent the Class.......18

        B.     The Class Satisfies Rule 23(b)(3) ..........................................................18

               1.     Common Questions Predominate. ..............................................19

               2.     Superiority...................................................................................20

VI.    B&F AND DRURY LEGAL SHOULD BE APPOINTED AS CLASS COUNSEL .......20

VII.   THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED ...........................21

        A.     The Content of the Proposed Class Notice Complies with Rule 23(c)(2)
               and the Northern District's Procedural Guidelines.................................21

        B.     Distribution of the Class Notice Will Comply with Rule 23(c)(2).......................21

CONCLUSION.........................................................................................................21

1

## TABLE OF AUTHORITIES

**PAGE(S)**

2

3

**CASES**

4

*Alvarez v. Sirius XM Radio Inc.*,
   2020 WL 7314793 (C.D. Cal. July 15, 2020) ......................................................................... 12

5

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997) .............................................................................................................. 15, 19

6

7

*Arnott v. U.S. Citizenship & Immigr. Servs.*,
   290 F.R.D. 579 (C.D. Cal. 2012) ........................................................................................... 15

8

*Barbosa v. Cargill Meat Sols. Corp.*,
   297 F.R.D. 431 (E.D. Cal. 2013) ............................................................................................ 19

9

10

*Carlotti v. ASUS Computer Int'l*,
   2019 WL 6134910 (N.D. Cal. Nov. 19, 2019) ........................................................................ 5

11

12

*Carter v. XPO Logistics, Inc.*,
   2019 WL 5295125 (N.D. Cal. Oct. 18, 2019) .......................................................................... 6

13

*Cavin v. Home Loan Ctr., Inc.*,
   236 F.R.D. 387 (N.D. Ill. 2006) ............................................................................................. 15

14

15

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F. 3d 566 (9th Cir. 2004) ................................................................................................... 6

16

17

*Cottle v. Plaid Inc.*,
   340 F.R.D. 356 (N.D. Cal. 2021) ............................................................................................ 15

18

*Dexter's LLC v. Gruma Corp.*,
   2023 WL 8790268 (S.D. Cal. Dec. 19, 2023) ......................................................................... 7

19

20

*Elder v. Hilton Worldwide Holdings, Inc.*,
   2020 WL 11762284 (N.D. Cal. Apr. 29, 2020) ....................................................................... 5

21

22

*Evans v. Linden Rsch., Inc.*,
   2013 WL 5781284 (N.D. Cal. Oct. 25, 2013) ........................................................................ 21

23

*Garner v. State Farm. Mut. Auto. Ins. Co.*,
   2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ......................................................................... 6

24

25

*Guzman v. Oxnard Lemon Assocs., Ltd.*,
   1992 WL 510094 (C.D. Cal. Aug. 28, 1992) .......................................................................... 16

26

27

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ........................................................................................ passim

28

*Hester v. Vision Airlines, Inc.*,
　　2009 WL 4893185 (D. Nev. Dec. 16, 2009)..........................................................................18

*In re Extreme Networks, Inc. Sec. Litig.*,
　　2019 WL 3290770 (N.D. Cal. July 22, 2019)........................................................................14

*In re Google Location History Litig.*,
　　2024 WL 1975462 (N.D. Cal. May 3, 2024) .........................................................................11

*In re Mego Fin. Corp. Sec. Litig.*,
　　213 F.3d 454 (9th Cir. 2000) .......................................................................................10, 13

*In re Netflix Privacy Litig.*,
　　2013 WL 1120801 (N.D. Cal. Mar. 18, 2013)..........................................................................9

*In re Pac. Enters. Sec. Litig.*,
　　47 F.3d 373 (9th Cir. 1995) ............................................................................................5, 13

*In re Tableware Antitrust Litig.*,
　　484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...................................................................................5

*In re Vizio, Inc., Consumer Priv. Litig.*,
　　2019 WL 12966639 (C.D. Cal. Jan. 4, 2019) .......................................................................15

*Johnson v. Triple Leaf Tea Inc.*,
　　2015 WL 8943150 (N.D. Cal. Nov. 16, 2015) .........................................................................9

*Just Film, Inc. v. Buono*,
　　847 F.3d 1108 (9th Cir. 2017) .............................................................................................17

*Knapp v. Art.com, Inc.*,
　　283 F. Supp. 3d 823 (N.D. Cal. 2017) ....................................................................................9

*Krommenhock v. Post Foods, LLC*,
　　334 F.R.D. 552 (N.D. Cal. 2020)..........................................................................................16

*Lane v. Facebook, Inc.*,
　　696 F.3d 811 (9th Cir. 2012) ...............................................................................................14

*Larsen v. Trader Joe's Co.*,
　　2014 WL 3404531 (N.D. Cal. July 11, 2014).........................................................................8

*Linney v. Cellular Alaska P'ship*,
　　1997 WL 450064 (N.D. Cal. July 18, 1997)..........................................................................13

*Local Joint Executive Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*,
　　244 F.3d 1152 (9th Cir. 2001) .............................................................................................19

*Meyer v. Portfolio Recovery Assocs., LLC*,
　　707 F.3d 1036 (9th Cir. 2012) .............................................................................................16

*Miramontes v. U.S. Healthworks, Inc.*,
   2017 WL 11633665 (C.D. Cal. Sept. 5, 2017) ........................................................ 10

*Moss v. USF Reddaway, Inc.*,
   2018 WL 5099291 (C.D. Cal. Feb. 15, 2018)........................................................... 8

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004)........................................................... 8, 9, 11

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ........................................................... 6, 9

*Pena v. Taylor Farms Pac., Inc.*,
   2021 WL 916257 (E.D. Cal. Mar. 10, 2021) ........................................................... 6

*Perks v. Activehours, Inc.*,
   2021 WL 1146038 (N.D. Cal. Mar. 25, 2021)........................................................... 11, 14

*Pipich v. O'Reilly Auto Enterprises, LLC*,
   2024 WL 2885342 (S.D. Cal. June 7, 2024)........................................................... 6

*Ramirez v. TransUnion LLC*,
   951 F.3d 1008 (9th Cir. 2020) ........................................................... 18

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ........................................................... 6, 8, 9

*Santoro v. Aargon Agency, Inc.*,
   252 F.R.D. 675 (D. Nev. 2008) ........................................................... 18

*Smith v. Kaiser Found. Hosps.*,
   2021 WL 2433955 (S.D. Cal. June 15, 2021)........................................................... 8

*State of California v. eBay, Inc.*,
   2014 WL 4273888 (N.D. Cal. Aug. 29, 2014) ........................................................... 14

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ........................................................... 18

*Torres v. Pet Extreme*,
   2015 WL 224752 (E.D. Cal. Jan. 15, 2015) ........................................................... 7

*Torres v. Pet Extreme*,
   2015 WL 13653878 (E.D. Cal. Feb. 25, 2015) ........................................................... 7

*Vandervort v. Balboa Cap. Corp.*,
   8 F. Supp. 3d 1200 (C.D. Cal. 2014) ........................................................... 7

*Villegas v. J.P. Morgan Chase & Co.*,
   2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ........................................................... 12

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ................................................................... 13

*Wellens v. Sankyo*,
   2016 WL 8115715 (N.D. Cal. Feb. 11, 2016) .......................................... 13

*White v. Imperial Adjustment Corp.*,
   2002 WL 1809084 (E.D. La. Aug. 6, 2002) ............................................. 15

*Wolin v. Jaguar Land Rover N. Am. LLC*,
   617 F.3d 1168 (9th Cir. 2010) ................................................................... 20

**RULES**

Fed. R. Civ. P. 23 ........................................................................................... passim

Fed. R. Civ. P. 23(a) ............................................................................... 15, 16, 17

Fed. R. Civ. P. 23(b) ...................................................................................... passim

Fed. R. Civ. P. 23(c) ............................................................................................. 21

Fed. R. Civ. P. 23(e) ...................................................................................... passim

Fed. R. Civ. P. 23(g) ............................................................................................ 20

**OTHER AUTHORITIES**

3 Newberg and Rubenstein on Class Actions § 7:19 (6th ed.) ........................... 15

Manual for Complex Litigation, Second § 30.44 (1985) ...................................... 5

# MEMORANDUM OF LAW

## I.    INTRODUCTION

Plaintiff Jane Doe ("Plaintiff") and Defendant Joyous, PBC ("Joyous" or "Defendant")[1] have reached a nationwide class action settlement in this matter which establishes a common fund of $400,000.00 (the "Settlement Fund").  This Settlement is an extraordinary result, reached after months of hard-fought negotiations. If approved, Settlement Class Members will automatically receive immediate monetary relief from the Settlement Fund.

Accordingly, Plaintiff respectfully requests that the Court: (i) grant preliminary approval of the proposed Settlement Agreement, (ii) provisionally certify the Class for the purposes of preliminary approval, designate Plaintiff as the Class Representative, and appoint Philip L. Fraietta of Bursor & Fisher, P.A. ("B&F") and Scott R. Drury of Drury Legal, LLC ("Drury Legal") as Class Counsel; (iii) establish procedures for providing notice to members of the Settlement Class; (iv) approve forms of Class Notice to Settlement Class Members; (v) mandate procedures and deadlines for exclusion requests and objections; and (vi) set a date, time, and place for a Final Approval Hearing.

## II.    PROCEDURAL BACKGROUND

Plaintiff Jane Doe filed this action on April 19, 2024. ECF No. 1. On August 8, 2024, the Court referred the case to private mediation. ECF No. 23. The Parties participated in a mediation with former California Superior Court Judge Bonnie Sabraw, who is a neutral mediator affiliated with ADR Services, Inc., on October 21, 2024. The Parties did not reach a settlement on that date, but continued to negotiate and over the following months, and ultimately finalized the Settlement Agreement. The Parties finally executed the Settlement Agreement on April 28, 2025.

## III.    INFORMATION ABOUT THE PROPOSED SETTLEMENT

The key terms of the settlement are summarized below, in accordance with the Northern District of California's Procedural Guidelines for Class Action Settlements ("Procedural Guidelines" or "PG").

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings ascribed to them in the Settlement Agreement, attached as Exhibit 1, to the Declaration of Philip L. Fraietta (the "Fraietta Decl.").

## A.    PG 1(a): Class Definition

The proposed Settlement Class consists of "all persons in the United States starting on October 5, 2023 through January 2, 2025 who reported to Defendant Joyous PBC that they: (1) located Defendant Joyous PBC organically, not through a web advertisement; and (2) booked an appointment to use the services provided by Defendant Joyous PBC, completed a screening questionnaire related to the booking process and subsequently received one or more web-directed advertisements relating to ketamine treatments." Settlement Agreement § 1.31. Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this Action and members of their families; (2) the Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded persons. *Id.* This modifies the Class definition in the Complaint consistent with the evidence to-date regarding Defendant's conduct.

## B.    PG 1(b): The Claims to be Released

Consistent with the allegations in the Complaint, the Settlement Agreement releases:

> [A]ny and all manner of actual, potential, filed, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands, liabilities, rights, causes of action, contracts or agreements, extra contractual claims, damages, punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees and or obligations (including "Unknown Claims," as defined below), whether in law or in equity, accrued or un-accrued, direct, individual or representative, of every nature and description whatsoever, whether based on the CIPA or other state, federal, local, statutory or common law or any other law, rule or regulation, against the Released Parties, or any of them, arising out of any facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act regarding the alleged disclosure of the Settlement Class Members' personal information or Joyous Subscriber Information, including but not limited to all claims that were brought or could have been brought in the Action relating to any and all Releasing Parties

Settlement Agreement § 1.26.

This includes Plaintiff's claims for California Confidentiality of Medical Information Act ("CMIA"), the California Invasion of Privacy Act ("CIPA"), and California Constitutional claims.

Plaintiff's counsel is not aware of any other cases that will be affected by the settlement.

Fraietta Decl. ¶ 13.

**C.    PG 1(e), 1(g), 6, 7, 8: Allocations and Payments from the Settlement Fund**
**The Settlement Fund**

Joyous will pay $400,000.00 into a non-reversionary Settlement Fund that will be used to pay all Settlement Class Members, Notice and Settlement Administration Costs, taxes owed by the Settlement Fund, any Court-approved service award to Plaintiff, and any Court-approved Attorneys' Fees and Expense Award. Settlement Agreement §1.33. The Settlement Amount reverts to Joyous only if the Settlement Agreement is voided, cancelled, or terminated. Settlement Agreement § 9.

Class Members will not be required to submit claim forms in order to participate in the Settlement. Instead, the Net Settlement Fund will automatically be distributed to Class Members on a *pro rata* basis. Settlement Agreement § 2.1.b. The amount to be distributed to each Authorized Claimant will be calculated by dividing the Net Settlement Fund by the number of Class Members. *Id.* Any funds remaining after the 180-day deadline for negotiating Claim Payment checks will be redistributed *pro rata* to Authorized Claimants that cashed their initial distribution check or received an electronic payment, so long as the reallocated *pro rata* share to each eligible Authorized Claimant is at least $5.00. *Id.* § 2.1.g. Any funds still remaining after 180 days from distribution will be distributed *cy pres* to the California Access to Justice Commission or another non-sectarian, not-for-profit organization(s) recommended by Class Counsel and approved by the Court. *Id.*

**Service Awards**

In recognition of her efforts on behalf of the Settlement Class, subject to Court approval, Plaintiff will apply for a service award of $ 5,000, as appropriate compensation for her time and effort serving as Plaintiff and putative Class Representative. Plaintiff has spent substantial time on this action, as she has assisted with the investigation of this action and the drafting of the Complaint, been in contact with counsel frequently, stayed informed of the status of the action, and has approved and executed the Settlement. Fraietta Decl. ¶ 21.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Attorneys' Fees and Expense Award**

The Settlement Agreement provides that the Settlement Fund may also be used to pay Plaintiff's Counsel's reasonable attorneys' fees and to reimburse expenses in this action, in an amount to be approved by the Court.  *See* Settlement Agreement § 8.1. Plaintiff will petition the Court for an award of attorneys' fees not to exceed 25% of the Settlement Fund ($100,000) plus reasonable Litigation Expenses. Fraietta Decl., ¶ 20. At this time, Plaintiff anticipates seeking no more than $10,000 as reimbursement for any Litigation Expenses incurred by Plaintiff's Counsel. *Id.* The lodestar invested in this case by Plaintiff's Counsel as of April 2025 is approximately $107,000.[2] *Id.* If this lodestar remains unchanged (which is unlikely), the proposed attorneys' fee would be less than Plaintiff counsel's lodestar. *Id.*

**D.     PG 1(f) & PG 2: Settlement Administration**

The proposed Settlement Administrator is Simpluris. *Id.* ¶ 22. Counsel selected the Settlement Administrator after soliciting competing bids from two potential claims administrators, each of whom submitted responses. *Id.* Email notice and supplemental notice methods (*e.g.*, mail notice and paid digital/social media plans) were proposed by each potential administrator. *Id.* Over the past two years, to the best of my knowledge, Bursor & Fisher has utilized Simpluris as a settlement administrator for new engagements two times. *Id.* ¶ 24. This is Drury's first engagement with Simpluris. *Id.*

Plaintiff's Counsel is satisfied that Simpluris employs numerous control systems and procedures that it believes meet or exceed relevant industry standards for securely handling class member data, including technical controls, administrative policies, and physical access controls for handling such data and appropriate data collection and retention, data destruction, audit, and crisis and risk management policies. *See* Declaration of Meagan Brunner of Simpluris, Inc. Regarding the Proposed Notice Plan and In Support of Plaintiff's Motion for Preliminary Approval ("Brunner Decl.") ¶¶ 4-18. Simpluris accepts responsibility for the security of Class Member's information and data and implements detailed trainings and response plans to secure such data. *Id.*

---

[2] In moving for final approval, Plaintiff will provide the total amount of Litigation Expenses and lodestar for all Plaintiff's Counsel.

¶¶ 16-18. Simpluris maintains insurance in case of errors, including coverage for professional liability errors and omissions in its administration, as well as a fidelity bond for employee dishonesty losses, additional computer fraud and wire transfer communications fraud coverage, and network and information security liability coverage. *Id.* ¶ 19.

Simpluris anticipates a total of administrative costs not to exceed $36,000. Brunner Decl. ¶ 20. This amount is reasonable given that it accounts for only 9% of the total settlement value. The costs are to be paid out from the Settlement Fund. Settlement Agreement § 1.33.

## IV.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

The purpose of a preliminary approval hearing is for the Court to ascertain whether to notify the putative class members of the proposed settlement and to proceed with a fairness hearing. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).  Notice of a settlement should be disseminated where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Id.* (internal quotation marks omitted) (*quoting* Manual for Complex Litigation, Second § 30.44 (1985)); *see also Elder v. Hilton Worldwide Holdings, Inc.*, No. 16-cv-00278-JST, 2020 WL 11762284, at *3 (N.D. Cal. Apr. 29, 2020) (a court must preliminarily find "that it will likely be able to . . .  (ii) certify the class for purposes of judgment on the proposal.") (quoting Fed. R. Civ. P. 23(e)(1)(B)) (internal quotations omitted).  While the Court has discretion regarding the approval of a proposed settlement, it should give "proper deference to the private consensual decision of the parties."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).   When a settlement is negotiated at arm's-length by experienced counsel, there is a presumption that it is fair and reasonable.  *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); *Carlotti v. ASUS Computer Int'l*, 2019 WL 6134910, at *6 (N.D. Cal. Nov. 19, 2019) ("Class settlements are presumed fair when they are reached 'following sufficient discovery and genuine arms-length negotiation.'") (citations omitted). Ultimately, the Court's role is to ensure that the settlement is fundamentally fair, reasonable, and adequate.  *Carlotti*, 2019 WL 6134910, at *3.

1    Rule 23(e)(2) provides that "the court may approve [a proposed class action settlement]

2    only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P.

3    23(e)(2). When making this determination, the Ninth Circuit has instructed district courts to

4    balance several factors: (1) "the strength of the plaintiff's case;" (2) "the risk, expense, complexity,

5    and likely duration of further litigation;" (3) "the risk of maintaining class action status throughout

6    the trial;" (4) "the amount offered in settlement;" (5) "the extent of discovery completed and the

7    stage of the proceedings"; and (6) "the experience and views of counsel."[3] *Hanlon*, 150 F.3d at

8    1026; *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F. 3d 566, 575 (9th Cir. 2004) (same);

9    *Sciortino v. Pepsico, Inc* 2016 WL 3519179, at *4 (N.D. Cal. June 28, 2016) (same); *Pena v. Taylor*

10   *Farms Pac., Inc.*, 2021 WL 916257, at *3 (E.D. Cal. Mar. 10, 2021) (same); *Carter v. XPO*

11   *Logistics, Inc.*, 2019 WL 5295125, at *2 (N.D. Cal. Oct. 18, 2019). In addition to these factors,

12   courts also consider the four enumerated factors in Federal Rule of Civil Procedure Rule 23(e)(2),

13   and any agreement required to be identified under Rule 23(e)(3). *See* Fed. R. Civ. P. 23(e)(2);

14   *accord Pena*, 2021 WL 916257, at *2-3. There is a significant overlap between the *Hanlon* factors

15   and the Rule 23(e)(2) factors.

16       A.    **The *Hanlon* Factors**

17             **Strength of Plaintiff's Case**

18       In determining the likelihood of a plaintiff's success on the merits of a class action, "the

19   district court's determination is nothing more than an amalgam of delicate balancing, gross

20   approximations and rough justice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625

21   (9th Cir. 1982). The court may "presume that through negotiation, the [p]arties, counsel, and

22   mediator arrived at a reasonable range of settlement by considering [p]laintiff's likelihood of

23   recovery." *Garner v. State Farm. Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. Apr.

24   22, 2010) (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

25

26   [3] In *Hanlon*, the Ninth Circuit also instructed district courts to consider "the reaction of the class
     members to the proposed settlement." *Hanlon*, 150 F.3d at 1026. This consideration is more

27   germane to final approval and will be addressed at that time. *See Pipich v. O'Reilly Auto*
     *Enterprises, LLC*, 2024 WL 2885342, at *10 (S.D. Cal. June 7, 2024) (explaining a full assessment

28   of the fairness factors is not necessary at the preliminary approval stage and is "reserved" for final
     approval).

1    Plaintiff's underlying investigation, which includes detailed analysis of source code on
2    Defendant's website, provides a strong factual basis for Plaintiff's claims and a potential recovery.
3    Plaintiff has always believed, and still believes, that Joyous would be held liable on the merits if
4    the case proceeded to trial.  Plaintiff would expect discovery to confirm Joyous's use of the
5    tracking technologies at issue. Fraietta Decl. ¶ 15.  If Plaintiff was to succeed at trial on behalf of
6    a nationwide class, and maximum statutory penalties were awarded under CIPA and the CMIA,
7    Joyous would have been liable for approximately $60 million *Id.*

8    Nevertheless, Plaintiff and her counsel recognize that a favorable outcome was not assured
9    and that her claims against Joyous would face risks at the class certification, summary judgment,
10   and trial phases of the Litigation.  *Id.* ¶ 16. The Settlement Class faced risks at class certification
11   given the new and evolving landscape of laws governing data collected through Defendant's
12   Tracking Software. *See Dexter's LLC v. Gruma Corp.*, No. 23-CV-212-MMA-AHG, 2023 WL
13   8790268, at *5 (S.D. Cal. Dec. 19, 2023) (finding risk of continued litigation favors approval of
14   settlement given "the evolving legal landscape" of the law at issue in the case); *Torres v. Pet
15   Extreme*, No. 1:13-CV-01778-LJO, 2015 WL 224752, at *6 (E.D. Cal. Jan. 15, 2015) (finding that
16   the "risk that an opinion could issue changing the legal landscape in this relatively new area of
17   [law]" favors approval of settlement), *adopted* 2015 WL 13653878 (Feb. 25, 2015); *Vandervort v.
18   Balboa Cap. Corp.*, 8 F. Supp. 3d 1200, 1206 (C.D. Cal. 2014) (finding "novel legal issues" raised
19   in the case "favor approving [the] settlement); Fraietta Decl. ¶ 16. Although there are many cases
20   pending in this District for similar misconduct, none have advanced through the class certification
21   stage.[4] Fraietta Decl. ¶ 16. This developing body of law presents inherent risks regarding the scope
22   and nature of the Class. *Id.*

23   Similar risks also exist at the merits stage of the Litigation. Plaintiff is aware of only one
24   case involving similar Tracking Software to reach the summary judgment stage: *Frasco v. Flo
25   Health, Inc.*, 3:21-cv-00757 (N.D. Cal.), ECF No. 485; Fraietta Decl. ¶ 17. While the court there
26   denied Google's motion for summary judgment on many of the same issues presented in this case,

27

28

---

[4] *See, e.g.*, *Frasco v. Flo Health*, No. 3:21-cv-00757 (N.D. Cal.) (Donato, J.); *Doe v. FullStory,
Inc.*, No. 3:23-cv-00059 (N.D. Cal.) (Orrick, J.); *In re Meta Pixel Healthcare Litig.*, No.
3:22-cv-03580 (N.D. Cal.) (Orrick, J.).

the record here is still undeveloped, leaving residual uncertainty as to Defendant's potential defenses. *Id.*; *see Moss v. USF Reddaway, Inc.*, No. EDCV15-01541-JAK-FFMx, 2018 WL 5099291, at *7 (C.D. Cal. Feb. 15, 2018) (finding the risk of "proceed[ing] on the merits" weighs in favor of settlement where defendants raised "many substantive defenses" in their unresolved summary judgment motion); *Smith v. Kaiser Found. Hosps.*, No. 18-CV-00780-KSC, 2021 WL 2433955, at *7 (S.D. Cal. June 15, 2021) (finding that risk of "continued litigation" at later stages such as summary judgment weighs in favor of approval where some "factual disputes" remain).

The Settlement eliminates these and other risks of non-recovery to Plaintiff and the Class and replaces them with certain relief and a positive recovery for each Settlement Class Member. *Id.*; *see Rodriguez*, 563 F.3d at 956-66 ("[O]ne factor that may bear on review of a settlement is the advantages of the proposed settlement versus the probably outcome of a trial on the merits of liability and damages as to the claims, issues, or defenses of the class and individual class members[.]") (citation and internal quotations omitted).

### Risk of Continuing Litigation

Given the risks associated with continued litigation, approval of the proposed settlement is appropriate. Generally, acceptance and approval of settlement is preferable to litigation, unless the settlement is "clearly inadequate," *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004), and settlements are "favored where, as here, significant procedural hurdles remain, including class certification and an anticipated appeal." *Larsen v. Trader Joe's Co.*, 2014 WL 3404531, at *4 (N.D. Cal. July 11, 2014) (citing *Rodriguez*, 563 F.3d at 966). By reaching a favorable settlement now, Plaintiff seeks to avoid significant expense and delay, and better assure recovery for the Class.

Barring settlement approval, the case would require prolonged discovery, including depositions and substantial written discovery, expert discovery, and summary judgment on Plaintiff's claims against Joyous and its defenses. Even if Plaintiff's claims—and the Settlement Class as defined—survived all of these challenges, they would face risks at trial. Despite every jury selection tool that is available today, it is virtually impossible to predict with any certainty how a jury will evaluate liability and damages, making the ultimate outcome at trial highly

1    uncertain for both parties. Looking beyond trial, Joyous or Plaintiff would also likely appeal the
2    merits of at least some adverse decision, adding several years to disposition, as well as prolonging
3    the life of the risks described herein.

4         The Settlement, by contrast, accounts for these risks and permits a prompt resolution of
5    this Litigation on terms that are fair, reasonable, and adequate to the Class. This result will be
6    accomplished years earlier than if the case proceeded to judgment through trial and/or appeals, and
7    provides certainty. "Accordingly, the high risk, expense, and complex nature of the case weigh in
8    favor of approving the settlement." *Id.* (citing *Rodriguez*, 563 F.3d at 964).

9                          **Risk of Maintaining Class Action Status**

10        Plaintiff also faces risks in maintaining class status through trial. Assuming that the Court
11   were to grant a motion for class certification, Joyous could seek an interlocutory appeal or attempt
12   to decertify the Class based on subsequent developments. *See In re Netflix Privacy Litig.*, 2013
13   WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a
14   class at any time . . . is one that weighs in favor of settlement.") (internal citations omitted). Risk,
15   expense, and delay permeate such a process. "[C]onsummating this Settlement promptly in order
16   to provide effective relief to Plaintiff and the Class" eliminates these risks by ensuring Settlement
17   Class Members receive a recovery that is certain and immediate. *Johnson v. Triple Leaf Tea Inc.*,
18   2015 WL 8943150, at *4 (N.D. Cal. Nov. 16, 2015). The Settlement eliminates these risks,
19   expenses, and delay.

20                      **PG 1(c): The Amount Offered in Settlement**

21        The determination of "the fairness, adequacy, and reasonableness of the amount offered in
22   settlement is not a matter of applying a 'particular formula.'" *Knapp v. Art.com, Inc.*, 283 F. Supp.
23   3d 823, 832 (N.D. Cal. 2017) (quoting *Rodriguez*, 563 F.3d at 965). In assessing the consideration
24   available to Settlement Class Members in a proposed Settlement, "[i]t is the complete package
25   taken as a whole, rather than the individual component parts, that must be examined for overall
26   fairness." *DIRECTV, Inc.*, 221 F.R.D. at 527 (quoting *Officers for Justice*, 688 F.2d at 628). "[I]t
27   is well-settled law that a proposed settlement may be acceptable even though it amounts to only a
28   fraction of the potential recovery that might be available to the class members at trial." *Id.* (citation

omitted).

This amount is reasonable given Joyous's current financial condition. While, at their maximum, the statutory penalties available under CIPA and CMIA could amount to $60 million, assuming they apply to the nationwide class (*see* Fraietta Decl. ¶ 6.), Joyous likely could not withstand a judgment of that size. Fraietta Decl. ¶ 18. Rather than insist on an illusory, maximum recovery that Joyous would be unable to pay, the Settlement resolves Plaintiff's and Settlement Class Members' claims for an estimated $37 per person.[5] Fraietta Decl. ¶ 12. This significantly higher per class member than other actions involving similarly claims with statutory damages. *See Vela v. AMC Networks, Inc.*, No. 1:23-cv-02524-ALC (S.D.N.Y) (providing $9.00 per class member in an action alleging violations of the Video Privacy Protections Act); *In re Advocate Aurora Health Pixel Litig.*, No. 22-CV-1253 (E.D. Wis.) (providing $11.64 per class member in an action alleging wiretapping claims).

Weighing the benefits of the proposed Settlement against the risks associated with continued litigation and in collecting on any judgment, the proposed Settlement is more than reasonable.

**The Extent of Discovery**

Courts also evaluate whether class counsel had sufficient information to make an "informed decision" about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Plaintiff received information as a result of discovery and related to the mediation, including information regarding the implementation of the Pixels and APIs on Defendant's website and information regarding Defendant's financial condition. In short, the proposed Settlement is the result of fully informed negotiations. Fraietta Decl. ¶ 19.

**Experience and Views of Counsel**

The judgment of experienced counsel regarding the Settlement is entitled to great weight. *Miramontes v. U.S. Healthworks, Inc.*, 2017 WL 11633665, at *7 (C.D. Cal. Sept. 5, 2017) ("Significant weight should be attributed to the belief of experienced counsel that the settlement

---

[5] This is calculated assuming a *pro rata* distribution of the Settlement, based on the Settlement Administrator's projections and subtracting the proposed attorneys' fees and costs, service awards to Plaintiff, and Litigation Expenses. *See* Section III.C.1, above.

is in the best interest of the Class") (citing *DIRECTV, Inc.*, 221 F.R.D. at 528). "[T]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Google Location History Litig.*, 2024 WL 1975462, at *8 (N.D. Cal. May 3, 2024). Plaintiff's Counsel here have extensive experience in prosecuting and litigating consumer class action cases. Fraietta Decl. ¶ 19. They have conducted extensive investigation in this case, and demanded and obtained documents and information in advance of mediation and in discussions with Defendant's counsel. *Id.* That qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate under the applicable factors weighs heavily in favor of this Court's approval of the Settlement.

## B.    Rule 23(e)(2) Factors

### 1.    The Class Is Adequately Represented

As discussed further below, Plaintiff's interests here are aligned with other Settlement Class Members' interests because they suffered the same injuries when Joyous disclosed their personally identifiable and confidential medical information to third parties without their consent. *See* Sections V.A.3-4. Because Plaintiff and the Class suffered these alleged injuries as a result of Defendant's common course of conduct, Plaintiff has an interest in vigorously pursuing the claims of the Class. *Id.* Further, as elaborated upon below, Plaintiff's attorneys have extensive experience (Fraietta Decl. ¶ 19), and have more than adequately met the obligations and responsibilities of Class Counsel. *See* Section V.A.4. This factor thus favors preliminary approval.

### 2.    The Settlement Was Negotiated at Arm's Length

This proposed Settlement is the result of extensive negotiations, including a formal mediation. Fraietta Decl. ¶ 4. Not only was the settlement not collusive, but Plaintiff achieved a result better than that of comparative actions. *See* Section IV.

Under such circumstances, the proposed Settlement is entitled to a finding of reasonableness, and the Court is entitled to rely upon counsel's opinions and assessments. *See Perks v. Activehours, Inc.*, 2021 WL 1146038, at *5 (N.D. Cal. Mar. 25, 2021) (approving settlement achieved following "arm's-length negotiations . . . supervised by [an experienced neutral]" and involving experienced class counsel that had performed sufficient investigation "to

1    make an informed decision about the Settlement and about the legal and factual risks of the case");

2    *Villegas v. J.P. Morgan Chase & Co.*, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (finding

3    use of mediators "tends to support the conclusion that the settlement process was not collusive").

4                    **3.    <u>The Settlement Provides Adequate Relief to the Settlement Class</u>**

5            Whether relief is adequate takes into account: "(i) the costs, risks, and delay of trial and

6    appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including

7    the method of processing class-member claims, if required; (iii) the terms of any proposed award

8    of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified

9    under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(i-iv). These factors subsume several *Hanlon*

10   factors including: "the risk, expense, complexity, and likely duration of further litigation," "the

11   risk of maintaining class action status throughout the trial," and "the amount offered in settlement."

12   *Hanlon,* 150 F.3d at 1026. As noted above, the Settlement satisfies all *Hanlon* factors. *See* Section

13   IV.A.1–6, *supra.*

14           Regarding "the effectiveness of any proposed method of distributing relief to the class," it

15   is "important for the court to scrutinize the method of claims processing to ensure that it facilitates

16   filing legitimate claims." *Alvarez v. Sirius XM Radio Inc.*, 2020 WL 7314793, at *6 (C.D. Cal.

17   July 15, 2020) (citing Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes). "A claims

18   processing method should deter or defeat unjustified claims, but the court should be alert to

19   whether the claims process is unduly demanding." *Id.* Under the terms of the proposed Settlement,

20   Settlement Class Members will not be required to to submit a claim and will be paid *pro rata*

21   payments from the Settlement Fund. Settlement Agreement § 2.1.b. These payments will be made

22   no later than 28 days after the Settlement's Effective Date. *Id*. The Court should thus find that "this

23   process is not unduly demanding, and that the proposed method of distributing relief to the Class

24   is effective." *Alvarez*, 2020 WL 7314793, at *6. Furthermore, unclaimed funds (*e.g.*, from

25   uncashed checks) will be re-distributed to Settlement Class Members, so long as each claimant

26   will received at least $5.00. Settlement Agreement § 2.1.g.

27           With respect to "the terms of any proposed award of attorney's fees,"[6] Plaintiff's Counsel

28   

---

[6] *See also* PG 6.

1  will apply for attorneys' fees and will not exceed 25% of the Settlement Fund ($100,000).

2  Settlement Agreement § 8.1. The Ninth Circuit has identified five factors that are relevant in

3  determining requested attorneys' fees are reasonable: (a) the results achieved; (b) the risk of

4  litigation; (c) whether Class Counsel's work generated benefits beyond the Class settlement fund,

5  (d) market rates as reflected by awards made in similar cases; and (e) the contingent nature of the

6  fee and the financial burden carried by Plaintiff and the Class. *See Vizcaino v. Microsoft Corp.*,

7  290 F.3d 1043, 1048-50 (9th Cir. 2002).  Although Plaintiff's Counsel will address each factor in

8  detail in any subsequent fee application, these requirements are easily satisfied now.

9  First, Plaintiff's Counsel has secured a $400,000 cash settlement. This is an excellent result

10  for the reasons stated above. *See* Section IV.A.4.

11  Second, Plaintiff has established that there are significant risks in entering protracted

12  litigation.  *See* Sections IV.A.1-3.

13  Third, the requested fee is below market rates as reflected by awards made in similar cases

14  in this district. *See*, *e.g.*,  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457-60 (9th Cir. 2000)

15  (affirming award of 33.5% of $1,725,000 settlement fund in fees); *Linney v. Cellular Alaska*

16  *P'ship*, No. C-96-3008 DLJ,  1997 WL 450064, at *7 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d

17  1234 (9th Cir. 1998) (affirming award of 33.3% of $6,000,000 settlement fund in fees); *id.* ("The

18  $2,000,000 requested by class counsel amounts to one-third of this common fund . . . Courts in

19  this district have consistently approved attorneys' fees which amount to approximately one-third

20  of the relief procured for the class."); *In re Pac. Enterprises Sec. Litig.*, 47 F.3d at 379 (affirming

21  award of 33.3% of $33,000,000 settlement fund in fees); *Wellens v. Sankyo*, 2016 WL 8115715,

22  at *3 (N.D. Cal. Feb. 11, 2016) (awarding 35% of $8,200,000 settlement fund in fees).

23  Finally, the requested fees are also fair given the time Plaintiff's Counsel has devoted to

24  this case on a contingency fee basis, with the threat of no recovery at all, absent successful

25  resolution. Thus, because of the contingent nature of the fee and the financial burden carried by

26  Plaintiff and the Class, Plaintiff's Counsel's fee award request of one-third of the total Settlement

27  Value is reasonable and appropriate in this case. *See Vizcaino*, 290 F.3d at 1048-50.

28  The Settlement thus provides adequate relief to the Class pursuant to Rule 23(e)(2)(C), and

1   the requested attorneys' fees are reasonable in relation to such relief.

2   **4.      The Settlement Is Equitable**

3   "The final Rule 23(e)(2) factor is whether 'the proposal treats class members equitably

4   relative to each other.'" *Perks*, 2021 WL 1146038, at *6 (citing Fed. R. Civ. P. 23(e)(2)(D)). As

5   explained above, there is no preferential treatment here because each Settlement Class Member

6   will  be paid a *pro rata* portion of the settlement. *See* Settlement Agreement § 2.1.b. Courts in this

7   district have found that allocating settlement benefits among class members in this manner is

8   equitable. *See In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *8 (N.D. Cal. July

9   22, 2019) (finding *pro rata* distribution equitable); *State of California v. eBay, Inc.*, 2014 WL

10  4273888, at *5 (N.D. Cal. Aug. 29, 2014) (explaining a proposed settlement is appropriate where

11  it "does not improperly grant preferential treatment to class representatives or segments of the

12  class").[7] Unclaimed funds will be redistributed to Settlement Class Members.. *See* Settlement

13  Agreement § 2.1.g.

14  Finally, any undistributed funds will go as a *cy pres* distribution to "California Access to

15  Justice Commission, a non-sectarian, not-for-profit organization." *Id*. Accordingly, the *cy pres*

16  funds will be used as a public good, thus indirectly benefiting Settlement Class Members. This

17  satisfies the requirements for a *cy pres* award in the Ninth Circuit. *See Lane v. Facebook, Inc.*, 696

18  F.3d 811, 819-22 (9th Cir. 2012); Settlement Agreement § 2.1.g. Thus, this factor weighs in favor

19  of granting approval.

20  **V.     CONDITIONAL CERTIFICATION OF THE RULE 23 CLASS IS**

21  **APPROPRIATE**

22  Plaintiff requests that the Court provisionally certify the following nationwide Settlement

23  Class:

24  All persons in the United States starting on October 5, 2023 through January 2,
    2025 who reported to Defendant Joyous PBC that they: (1) located Defendant
25  Joyous PBC organically, not through a web advertisement; and (2) booked an
    appointment to use the services provided by Defendant Joyous PBC, completed a
26

27  [7] The service awards requested for Plaintiff is presumptively reasonable and therefore do "not
    constitute inequitable treatment of class members." *See In re Extreme Networks, Inc. Sec. Litig.*,
28  2019 WL 3290770, at *8 (explaining [s]ervice awards as high as $5,000 are presumptively
    reasonable in this judicial district.").

1

2

3

4

5

screening questionnaire related to the booking process and subsequently received one or more web-directed advertisements relating to ketamine treatments. Excluded from the Settlement Class are (1) any Judge or Magistrate presiding over this Action and members of their families; (2) the Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (3) persons who properly execute and file a timely request for exclusion from the class; and (4) the legal representatives, successors or assigns of any such excluded persons.

6

7

8

9

10

*See* Settlement Agreement § 1.31. Provisional certification permits notice of the proposed Settlement to the Class to inform Settlement Class Members of the existence and terms of the proposed Settlement, of their right to be heard on its fairness, of their right to opt-out or object, and of the date, time, and place of the formal fairness hearing. *See* MANUAL for COMPLEX LITIG., §§ 21.632, 21.633.

11

12

13

14

The decision whether to certify these actions as class actions is committed to the sound discretion of this Court within the guidelines set forth in Fed. R. Civ. P. 23. *See*, *e.g.*, 3 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 7:19 (6th ed.); *Hanlon*, 150 F.3d at 1023; *Arnott v. U.S. Citizenship & Immigr. Servs.*, 290 F.R.D. 579, 584 (C.D. Cal. 2012).

15

16

17

18

19

20

21

22

23

24

25

Courts have long regarded "consumer claims" as "particularly appropriate for class resolution." *White v. Imperial Adjustment Corp.*, 2002 WL 1809084, at *15 (E.D. La. Aug. 6, 2002); *see also Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997); *Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 395-96 (N.D. Ill. 2006) ("[c]onsumer claims are among the most commonly certified for class treatment"). As set forth below, there is no basis for regarding these consumer claims any differently. In fact, the Ninth Circuit in *Hanlon*, 150 F.3d at 1019-23, specifically approved the class certification of a similar nationwide class for settlement purposes. *See also In re Vizio, Inc., Consumer Priv. Litig.*, 2019 WL 12966639, at *2 (C.D. Cal. Jan. 4, 2019) (conditionally certifying class for settlement of consumer privacy claims); *Cottle v. Plaid Inc.*, 340 F.R.D. 356, 363 (N.D. Cal. 2021) (certifying class for settlement purposes in case involving interception of plaintiffs' financial information).

26

27

28

Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the

claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests

of the class.

Fed. R. Civ. P. 23(a). Additionally, Rule 23(b)(3) requires the court to find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). As discussed below, all applicable Rule 23 requirements are met, and Joyous consents to provisional certification for settlement purposes. Thus, provisional certification should be granted.

### A.    The Class Satisfies Rule 23(a)

#### 1.    The Class Is Sufficiently Numerous.

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable.  Fed. R. Civ. P. 23(a)(1); *Hanlon*, 150 F.3d at 1019. There is "[n]o exact numerical formula" that determines numerosity. *Guzman v. Oxnard Lemon Assocs., Ltd.*, No. CV 91-6957 KN (EX), 1992 WL 510094, at *2 (C.D. Cal. Aug. 28, 1992). But numerosity can be presumed with 40 members. *See Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 562 n.2 (N.D. Cal. 2020) ("Courts generally find numerosity satisfied if the class includes forty or more members.") (citations omitted).  Here, the proposed Settlement Class includes approximately 10,000 Joyous website users. Fraietta Decl. ¶ 6.  Numerosity is thus satisfied.

#### 2.    Common Questions of Law and Fact Exist.

Rule 23(a)(2) requires the existence of common questions of law or fact. Fed. R. Civ. P. 23(a)(2).  Commonality means that the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012)). Commonality is liberally construed, and not all questions of fact and law "need [] be common to satisfy the rule." *Hanlon*, 150 F.3d at 1019.

The "existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.* at 1019-20.

The commonality and predominance hurdles are satisfied here. Common questions of law and fact exist as to all Settlement Class Members and predominate over questions affecting only individual Settlement Class Members. These questions include, for example:

a) Whether Defendant violated Settlement Class Members' privacy rights;

b) Whether Defendant's conduct constituted an invasion of privacy at common law;

c) Whether Defendant violated CIPA by aiding, agreeing, employing, and conspiring with third parties to intercept and use Settlement Class Members' communications; and

d) Whether Defendant violated the CMIA by disclosing health information to third parties through their Tracking Software.

Further, all legal theories asserted by Plaintiff against Joyous are common to the Class as a whole, which alone is sufficient to establish commonality. *See* Complaint (Counts 1, 3-6, 9, 11-12, 15); *see Hanlon*, 150 F.3d at 1019-20.

### 3.    Plaintiff's Claims are Typical

Rule 23(a)(3) requires that the class representatives' claims are typical of the class.  Fed. R. Civ. P. 23(a)(3). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020. To meet this requirement, Plaintiff need only demonstrate that they "endured a course of conduct directed against the class." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017).

Plaintiff's claims are typical of the claims of the Settlement Class Members in that Joyous disclosed the identifiable medical information of each Settlement Class Member entered into the Joyous website to third parties. *See* Complaint ¶¶ 24-82. Thus, because Plaintiff's claims arise "from the same event or practice or course of conduct that [gave] rise to the claims of other class

members and [their claims were] based on the same legal theory," Plaintiff's claims are typical. *Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1033 (9th Cir. 2020).

**4.    <u>Plaintiff and Her Counsel Adequately Represent the Class</u>**

The final threshold is that the named plaintiff be able fairly and adequately to protect the interests of the class. This determination turns on just two questions: "(1) [d]o the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003); *Santoro v. Aargon Agency, Inc.*, 252 F.R.D. 675, 682 (D. Nev. 2008).

Both components of the "adequacy" test are met here. Plaintiff has actively pursued this litigation on behalf of the Settlement Class Members. Both Plaintiff and Settlement Class Members were harmed by Defendant's alleged misconduct; they also share an identical interest in establishing Defendant's liability and obtaining a suitable remedy for Defendant's violations of law. The proposed Class Representatives have actively participated in and kept abreast of the Litigation while it developed. Fraietta Decl. ¶ 21. Plaintiff will adequately represent the Class and has no conflicts or positions antagonistic to the Class.

B&F and Drury Legal similarly satisfy the adequacy requirement and should be appointed counsel for Settlement Class. B&F and Drury Legal have demonstrated their commitment to the case and are experienced in the evolving field of data privacy litigation. Fraietta Decl. ¶ 19.

In retaining these firms, Plaintiff has employed counsel who are "qualified, experienced, and generally able to conduct the proposed litigation." *Hester v. Vision Airlines, Inc.*, No. 2:09-cv-00117, 2009 WL 4893185, at *5 (D. Nev. Dec. 16, 2009). With a wealth of experience in class action and other complex litigation that proposed Interim Co-Lead Class Counsel bring, there can be no doubt that they are adequate to represent the Settlement Class here.  Fraietta Decl. ¶ 19

**B.    The Class Satisfies Rule 23(b)(3)**

This action is well-suited for certification under Rule 23(b)(3) because, particularly in the context of this Settlement, questions common to the Settlement Class Members predominate over questions affecting only individual Settlement Class Members, and the class action device provides

the best method for the fair and efficient resolution of the Class's claims. Joyous does not oppose provisional class certification for the purpose of effectuating the proposed Settlement. When addressing the propriety of class certification, the Court should take into account the fact that, in light of the settlement, trial will now be unnecessary, and that the manageability of the Class for trial purposes and need to calculate damages is not relevant to the Court's inquiry. *See Amchem*, 521 U.S. at 593; *Hanlon*, 150 F.3d at 1021-23.

### 1. <u>Common Questions Predominate.</u>

A class action is appropriate under Rule 23(b)(3) if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members..." Fed. R. Civ. P. 23(b)(3). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," there is clear justification for class treatment. *Local Joint Executive Bd. of Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001).

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (citing *Amchem*, 521 U.S. at 621). If common questions "present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," then "there is clear justification for handling the dispute on a representative rather than on an individual basis," and the predominance test is satisfied. *Id.* at 1022. There is no definitive test for determining whether common issues predominate, however, in general, predominance is met when there exists generalized evidence which proves or disproves an [issue or] element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position. The main concern is "the balance between individual and common issues." *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 443 (E.D. Cal. 2013).

As explained in Section V.A.2, common issues predominate here because the Settlement Class's claims against Joyous can be proven using common evidence. Further, the proposed Settlement does not introduce individual legal or factual issues that would predominate over common issues. Certain manageability concerns are eliminated as there will no longer be a trial.

Thus, the predominance requirement is satisfied.

## 2. Superiority

"[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy." *Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Rule 23(b)(3)'s non-exclusive factors are: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action."

All of these factors are present here. There can be no doubt that managing these disputes in a single class action before a single judge is preferable and more manageable than to require thousands of users to each bring individual actions. The filing fees in such individual actions alone would likely exceed the value of any potential recovery; there would be no incentive for an individual to seek relief on an individual basis and, consequently, no adequate remedy would be reasonably achievable by Settlement Class Members.

## VI. B&F AND DRURY LEGAL SHOULD BE APPOINTED AS CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint class counsel … [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1), (4). In making this determination, the Court considers proposed counsel's: (1) work in identifying or investigating the potential claim, (2) experience in handling class actions, other complex litigation, and the types of claims asserted in the action, (3) knowledge of the applicable law, and (4) resources that it will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). As discussed above, proposed Class Counsel has extensive experience in prosecuting consumer privacy cases and consumer class actions in general. *See* Section V.A.4. As a result of their zealous efforts in this case, proposed Class Counsel have secured substantial monetary relief for the Settlement Class Members. Thus, the Court should appoint B&F and Drury Legal as Class Counsel for the Settlement Class.

VII.    **THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED**

The Parties' Proposed Notice Program comports with the Federal Rule and with due process and should be approved.[8]

A.    **The Content of the Proposed Class Notice Complies with Rule 23(c)(2) and the Northern District's Procedural Guidelines**

Pursuant to Federal Rule of Civil Procedure 23(c)(2)(B), the notice program must provide "the best notice that is practicable under the circumstances." *Evans v. Linden Rsch., Inc.*, 2013 WL 5781284, at *5 (N.D. Cal. Oct. 25, 2013). Utilizing contact information Defendant's possession, the Settlement Administrator will disseminate Mail and Email Notice directly to Settlement Class Members. *See* Settlement Agreement § 4.1.(b). The Mail and Email Notice will include text describing the key terms of the settlements in addition to providing a link the Settlement Website, which will host additional documents and information, such as the Long-Form Notice, Settlement Agreement, and any updates relating to the final fairness hearing or deadlines in the case. *See id*.

B.    **Distribution of the Class Notice Will Comply with Rule 23(c)(2)**

The Settlement Website will be published prior to or contemporaneously with Class Notice. Settlement Agreement *Id*.  The Settlement Website will include relevant documents and information about the Settlement. *Id*. § 1.34.

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant the motion for preliminary approval.

Dated:  April 28, 2025                    **BURSOR & FISHER, P.A**.

By:    */s/ Philip L. Fraietta*
                Philip L. Fraietta

Philip L. Fraietta (State Bar No. 354768)
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7408
Facsimile: (212) 989-9163
E-mail: pfraietta@bursor.com

---

[8] Simpluris will be responsible for Class Action Fairness Act (CAFA) notice. *See* Settlement Agreement § 1.29.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

L. Timothy Fisher (State Bar No. 191626)
Joshua R. Wilner (State Bar No. 353949)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com
        jwilner@bursor.com

**DRURY LEGAL, LLC**
Scott R. Drury (State Bar No. 355002)
6 Carriage Lane
Highwood, Illinois 60040
Telephone: (312) 358-8225
scott@drurylegal.com

*Attorneys for Plaintiff*